■ LONG ISLAND RAIL ROAD COMPANY, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.—Proceeding pursuant to section 298 of the Executive Law to review an order of the State Human Rights Appeal Board, dated June 3, 1977, which affirmed an order of the State Division of Human Rights, dated October 22, 1975, which, after a hearing, *inter alia,* determined that the Long Island Railroad had discriminated against the complainant, John T. Koabel, because of his disability in violation of the Human Rights Law. The State Division of Human Rights has cross-moved, *inter alia,* (1) to dismiss the petition and (2) for enforcement of its order. Petition granted; order annulled and cross motion denied, on the law, without costs or disbursements, and the complaint charging an unlawful discriminatory practice is dismissed. In 1973 the complainant, John T. Koabel, who had been employed for several summers as a bar car attendant by the Long Island Railroad, applied for a permanent position as a trainman with the railroad. The complainant was advised in August, 1974 that he had been accepted for employment subject to passing the medical examination. Upon the examination by a physician for the railroad, it was found that the complainant suffered from hypertension and a heart murmur. He was so advised. There followed a number of subsequent examinations by the railroad's physicians. The complainant then had his condition checked by his own physician. The formal rejection occurred more than a week prior to the effective date of the so-called "Flynn Act", which made it unlawful to discriminate against a person seeking employment because of a physical or mental disability. (See Executive Law, § 296.) The Flynn Act became effective on September 1, 1974. the Long Island Railroad's letter of rejection to the complainant was dated August 22, 1974. The only indication

of further action on the part of the railroad subsequent to the letter of rejection consists of an entry by Dr. Fox, the railroad's physician, in his "Medical Examination". This note apparently refers to a blood pressure reading taken on September 17, 1974. The handwritten entry begins by stating that there was a note from the complainant's doctor that the complainant had a blood pressure of 130/70. Obviously as a courtesy, Dr. Fox took the complainant's blood pressure and found it to be 178/100. The complainant's own testimony was that on a prior visit, Dr. Fox told him that he was going to be refused employment. In addition, the "Medical Examination" record contains a section that shows that the complainant was disapproved for employment. This section is signed and dated August 6, 1974. Absent any showing that the complainant affirmatively acted to formally renew his application for employment with the railroad, it must be concluded that the job application was terminated on August 22, 1974, prior to the effective date of the Flynn Act. The action of Dr. Fox on September 17, 1974 was neither sufficient to renew the application, nor of sufficient substantiality to permit the application of section 296 of the Executive Law in this case. Accordingly, the determination of the State Division of Human Rights that the complainant was under consideration for employment subsequent to the effective date of the amendment to section 296 of the Executive Law is not supported by substantial evidence. Martuscello, J. P., Rabin, Cohalan and Hawkins, JJ., concur.